**BOAT SUPERSTORE, INC., Appellant,**

v.

**Michael W. HANER, Appellee.**

**No. 01–93–00417–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 5, 1994.

Publication Ordered May 26, 1994.

Steven A. Owsley, Roger L. Merrill, Houston, for appellant.

Thomas W. Johnson, Houston, for appellee.

Before O'CONNOR, HEDGES and DUGGAN, JJ.

**OPINION**

DUGGAN, Justice.

Boat Superstore, Inc. (Superstore), appellant, seeks review by writ of error of the trial court's granting of a default judgment in favor of Michael W. Haner, appellee. Superstore contends that the trial court erred: (1) by granting the default judgment because the return of service was signed by someone other than the one designated by the court; (2) by awarding credit damages because Haner failed to plead credit damages; (3) by granting $2545 in unliquidated damages because there was insufficient evidence to substantiate the amount of damages; (4) by trebling actual damages pursuant to the TEX. BUS. & COM.CODE ANN. §§ 17.46 and 17.50 (Vernon 1987), commonly known as the Texas Deceptive Trade Practices Act (DTPA), because no evidence was presented that Superstore knowingly violated the DTPA; and (5) by trebling the sworn account damages. In a cross-point, Haner seeks a correction of the default judgment because he claims the trial court committed judicial error in computing the DTPA actual damages and additional damages. In a separate motion to dismiss, Haner claims that the writ of error was untimely filed. We sustain points of error two and four, and reverse the judg-

ment and remand the cause for further proceedings consistent with this opinion.

On February 24, 1990, Haner purchased a boat, motor, and trailer (the property) from Superstore. He financed the purchase through a Consumer Loan Contract—Security Agreement (Agreement),[1] which was ultimately assigned to John Deere Company (Deere). In an attempt to enforce the Agreement, Deere sued Haner and proceeded to foreclose its lien on the property. Haner answered the suit and filed a counterclaim against Deere and a third party action against Superstore. Haner and Deere settled their suit, resulting in the dismissal with prejudice of Deere's claim against Haner and Haner's counterclaim.

Haner, in his third party action against Superstore, alleged that, doing business as Electronic Security Service (ESS), he agreed to provide Superstore alarm monitoring services pursuant to an Alarm Monitoring Contract, and to lease Superstore an alarm system, pursuant to an Alarm System Lease Agreement, in return for the purchase of the property. According to Haner, Superstore agreed to pay him for security services, and in turn, Haner agreed to pay Superstore for the property. Haner alleged that Superstore enticed him into purchasing the property by making false, misleading and deceptive statements regarding Superstore's future payments for his security services. Haner claimed that without Superstore's representations, he would not have purchased the property.

Under a sworn account, Haner alleged that Superstore did not make the payments on the security equipment and services. Haner further claimed that Superstore took advantage of his lack of knowledge and experience to a grossly unfair degree so that the transaction was unconscionable as defined in the DTPA. Superstore did not answer to the third party claims,[2] and on September 15, 1992, the trial court entered a default judgment in favor of Haner.

We will first consider Haner's motion to dismiss. To prevail on its writ of error, Superstore must demonstrate that the application for writ of error was filed within six months of the date of the judgment, it was a party to the suit who did not participate in the trial, and that error is apparent from the face of the record. *DSC Fin. Corp. v. Moffitt*, 815 S.W.2d 551 (Tex.1991); *Mallia v. Bousquet*, 813 S.W.2d 628, 630 (Tex.App.—Houston [1st Dist.] 1991, no writ). It is undisputed that Superstore was a party to the present suit who did not appear at trial. Therefore, we must decide whether the writ of error was timely filed and whether error is apparent from the face of the record.

Tex.R.App.P. 5(a) provides that the day on which a judgment is signed is not included as part of a time period, and that if the last day of the period is a Saturday, Sunday or legal holiday, then the period ends the next day which is not a Saturday, Sunday or legal holiday. *Danesh v. Houston Health Clubs, Inc.*, 859 S.W.2d 535, 536 (Tex.App.—Houston [1st Dist.] 1993, writ ref'd). Here, the default judgment was signed on September 15, 1992, therefore the six month period began on September 16, 1992. Superstore filed its petition for writ of error on Monday, March 15, 1993, within the six month period. We overrule Haner's motion to dismiss for want of jurisdiction.

The trial court granted Haner's Tex. R.Civ.P. 103 motion designating Walt Andrus of The Spectrum Group as the person authorized to serve process on Superstore. In its first point of error, Superstore contends that the signature on the return of citation is "Walter Andrus" rather than "Walt Andrus," as authorized by the trial court. The return on the citation reflects the following:

Walt Andrus of the Spectrum

Group of Harris County, Texas

By: Walt?? Andrus

The underlined portions of the first two lines are printed; the underlined portion of the

---

1. On appeal, a copy of this agreement was not provided.

2. As part of the transcript, Superstore included a copy of its answer, file stamped December 3, 1992, approximately two and one-half months after the default judgment. At the time of the default judgment hearing, no answer was on file with the trial court.

last line is a signature, the first name of which is illegible after the "t"; the remaining portions are typed.

■ Generally, in a direct attack by writ of error on a default judgment, there are no presumptions as to the validity of service. *Whitney v. L. & L. Realty Corp.*, 500 S.W.2d 94 (Tex.1973); *Popkowsi v. Gramza*, 671 S.W.2d 915, 917 (Tex.App.—Houston [1st Dist.] 1984, no writ). Moreover, the record must affirmatively show a strict compliance with the procedural rules relating to the issuance, service, and return of citation. *Popkowsi*, 671 S.W.2d at 917.

■ In *Popkowsi*, we refused to set aside a default judgment because the return showed an "r" in "Popkowsi" where it should have shown a "k". *Id.* at 918. Here, we cannot determine what is written on the signature line after "Walt." As with many signatures, part of the name is an illegible scribble; we do not agree with Superstore's contention that it *must be* "Walter," rather than "Walt." Moreover, "Walt Andrus of the Spectrum Group" is legibly printed above the signature. Further, the cases cited by Superstore involve clear misspellings or incorrect initials, not an illegible scribble. We overrule Superstore's first point of error.

■ In its second point of error, Superstore claims that the trial court erred by awarding $2,545 in credit damages to Haner because he did not plead credit damage. Haner argues that the credit damages were actual, unliquidated damages properly pled in his petition:

**E. Actual Damages.** The conduct described in the preceding paragraphs was a producing cause of actual damages to Michael W. Haner. The amount of those damages exceeds the minimum jurisdictional limits of the court.

Haner claims that this pleading fairly notified Superstore of the relief he was seeking, which is all that is required.

In his concurring opinion in *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163–64 (Tex.1992), Chief Justice Phillips distinguished direct and consequential damages as separate types of actual damages under the DTPA.

[A]ctual damages can be either "direct" or "consequential." "Direct damages," ... compensate for the loss, damage or injury that is conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act.

On the other hand, "consequential damages," also known as "special damages," are those damages which result naturally, but not necessarily, from the acts complained of. Under the common law, they are not recoverable unless the defendant had notice that the plaintiff would suffer such damages. Even though the notice or foreseeability requirement may not be necessary under the DTPA, if the damages are too remote, too uncertain, or purely conjectural and speculative, they cannot be recovered. A consumer may recover consequential damages under the DTPA for a variety of injuries.... *In order to be recoverable, however, consequential damages must be specifically pled.*

*Id.* (citations omitted) (emphasis added); *see also* TEX.R.CIV.P. 56 (special damages must be specifically pleaded). Credit damages result naturally, but not necessarily, from the acts complained of, and as such, are consequential or special damages. *Bynum*, 836 S.W.2d at 163–64. Haner's pleadings fail to contain language regarding damage to his credit. We sustain point of error two.

In point of error three, Superstore contends that the trial court erred in awarding $2,545 in credit damages because Haner did not present evidence to substantiate the damages. Because we sustain point of error two, we need not consider point of error three.

In point of error four, Superstore contends that the trial court erred by trebling Haner's actual damages because he failed to present evidence that Superstore "knowingly" violated the DTPA.

■ The amount of additional damages to award after finding a violation of the DTPA is within the discretion of the trier of fact. *Henry S. Miller Co. v. Hamilton*, 813 S.W.2d 631, 634 (Tex.App.—Houston [1st Dist.] 1991, no writ). A default judgment

**380**

cannot establish the amount of unliquidated damages. *Id.* When damages are unliquidated, the plaintiff is required to prove the connection between the liability and the injury, despite the defendant's fault. *Morgan v. Compugraphics Corp.,* 675 S.W.2d 729, 731–32 (Tex.1984). Although by its failure to answer, Superstore admitted it was aware of its conduct, it did not further admit that the extent of its knowledge warranted the automatic imposition of treble damages. *Hamilton,* 813 S.W.2d at 634.

■ Haner cites the alarm monitoring and lease contracts as evidence that Superstore knowingly violated the DTPA because it knew that it had a duty to make payments under the contracts, and knowingly failed to make the payments. We disagree. The fact that Superstore knowingly entered into contracts is insufficient to show the extent to which that knowledge would warrant additional damages under § 17.50(b)(1) of the DTPA.

We sustain point of error four. We hold that no evidence was presented to support additional damages under the DTPA. On remand, Superstore may not contest whether its conduct was "knowing," but it may contest the extent to which its knowledge justifies additional damages. *See Hamilton,* 813 S.W.2d at 636; *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530, 534 (Tex.App.—San Antonio 1988, writ denied).

In its final point of error, Superstore contends that the trial court made a judicial error by trebling sworn account damages. In a related cross-point, Haner contends that the trial court erred in computing the actual and additional damages. Because we reverse and remand under point of error four, we need not address Superstore's point of error five, or Haner's cross-point.